# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMIE HAWLEY,

        Petitioner,

    -vs-

WARDEN, Southern Ohio
 Correctional Facility,

        Respondent.

:

:

:

Case No. 3:11-cv-360

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

      This is an action for writ of habeas corpus under 28 U.S.C. § 2254 by Petitioner Jamie Hawley. Upon initial review under Rule 4 of the Rules Governing § 2254 Cases, the Court ordered Respondent to answer and set a date by which Petitioner could file a reply (Doc. No. 4). Although Respondent filed an Answer/Return of Writ (Doc. No. 6), Petitioner has not filed a reply and the time allowed for him to do so has expired.

      Petitioner pleads the following Grounds for Relief:

> **Ground One:** the bogus confession used to convicted [sic] me.
>
> **Supporting Facts:** During my preliminary hearing the coerced signed confession should have been thrown out, mostly writing by the detective wrote out the confession, he coerced me into signing when I had ask for a lawyer present at that time of interrogation.
>
> **Ground Two:** No support evidence to support conviction of the appellant sentenced of crimes he's not done.
>
> **Supporting Facts:** At the preliminary hearing, the victim stated

-1-

>clearly she was told by, with the photo of me, is this guy who was in her home, and she couldn't see without her glasses on, that the trial court allow all of this bullcrap used against the appellant being convicted.
>
>**Ground Three:** Upon my arrest of the victim had identify [sic] a black male in all black clothes on.
>
>**Supporting Facts:** In Montgomery County Jail upon my arrest I had on tan jeans and a red hooded shirt, their [sic] was no proof of me changing clothes, but the victim gave a totally different description's of the black male who was in their home.
>
>**Ground Four:** Bogus testimony from officers who lied under oaths, not allow me to present new evidence.
>
>**Supporting Facts:** I never waived my rights upon arrest, my *Miranda* rights was first read to me until five minutes after taking me back to the police station, a witness is willing to come forward to help me clear my name of all charges against me. Officer Allison, Biggs and Parker totally lied under oaths at my trial, testimony's never established facts.

(Petition, Doc. No. 2, PageID 14-15.)

## Procedural History

Petitioner was indicted by the Montgomery County Grand Jury on February 21, 2006, on counts of aggravated burglary, attempted felonious assault, kidnaping, and theft of an automobile. Prior to trial he filed motions to suppress identification made by the victim and his statements to the police. The motions were overruled, a jury convicted Petitioner on all counts, and he was sentenced to twenty-two years imprisonment.

On direct appeal, the court of appeals considered arguments for suppression of the statements and eyewitness identification, as well as Petitioner's claim of innocence and rejected all of them.

The Ohio Supreme Court declined jurisdiction over a further appeal (Entry, Return of Writ, Doc. No. 6, Ex. 25). Petitioner then filed the instant Petition for Writ of Habeas Corpus.

Respondent does not plead any procedural defenses, but instead defends that state court of appeals decision on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 792 (2011); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000). The following analysis will proceed on that basis.

**Grounds One and Four (in part)**

In his first ground for relief, Hawley argues his confession should have been suppressed because it was coerced and because his request for a lawyer was denied. In part of Ground Four, he repeats his claim about his *Miranda* waiver.

The court of appeals summarized the evidence presented at trial as follows:

> [*P15] In January 2006, Vina Parrett-Baldwin and Deborah Clark both resided in a mobile home park called H&M Harmony Mobile Homes, commonly referred to as "H&M," located in West Carrollton, Ohio. [footnote omitted] Parrett-Baldwin lived at 12 Bella Costa Drive. Clark resided at 11 Palace Drive. The backyards of their homes abutted, but Clark and Parrett-Baldwin did not know each other.
>
> [*P16] At approximately 2:00 p.m. on January 25, 2006, a man wearing a dark blue hooded sweatshirt and with stubble on his face

knocked on the door of Parrett-Baldwin's residence. Parrett-Baldwin answered her door, keeping the glass screen door locked. The man asked Parrett-Baldwin to whom he needed to talk regarding obtaining a residence in the mobile home park. Parrett-Baldwin told him that he needed to talk to H&M, and she wrote the phone number and "H&M" on a sheet of paper. Parrett-Baldwin unlocked the screen door, handed the man the sheet of paper through a crack, and closed the door again. The man attempted to reach for the door, but Parrett-Baldwin quickly locked it. Parrett-Baldwin was uncomfortable about this encounter, and she contacted her husband and the property manager. When she looked out the window of her home, she did not see anyone or any vehicle.

[*P17]  Shortly thereafter, Clark was awakened by a knock on her door. When Clark went to her door, she observed a man, whom she later identified as Hawley, wearing dark pants, a zip-up hooded sweatshirt, a winter coat, and leather gloves. Clark also noticed he had stubble on his face. Hawley told Clark that he wanted information about the mobile home park, and he asked for the office telephone number. Clark asked Hawley to wait by the door while she wrote down the telephone number for him. When Hawley requested permission to use her telephone, Clark stated that she did not have one for him to use.

 [*P18]  Clark then walked onto her front patio to show Hawley the location of the H&M office, which could be seen from her home. As she did so, Hawley grabbed Clark around the neck from behind, placed her in a chokehold, and dragged her back into the home. Hawley repeatedly told Clark not to yell or he would kill her. Once in the home, Hawley pushed Clark onto her knees, facing her loveseat; he tied her hands behind her back with ribbon from a decorative wreath and took off Clark's glasses. Hawley looked through Clark's purse, asked her about her credit cards, and turned on various appliances to see if they worked. Hawley then forced Clark onto the bed in her bedroom. He tied Clark's ankles with another ribbon. Hawley asked about the keys to the trunk of her car, and he came in and out of the room. Eventually, Hawley told Clark he was leaving, he tried to apologize, and he told her not to move.

 [*P19]  After a few minutes, Clark heard her car start in the drive in front of her house. When it sounded as though Hawley had left the park, Clark United herself and looked around. She noticed that her television, microwave oven, and vacuum cleaner were missing. Her car, a white 1992 Saturn four-door sedan, was gone. Clark walked to

the H&M office and told the manager that she had been robbed. The manager contacted the police. Several West Carrollton police officers responded to the call. Officer Brian Brodbeck recovered the ribbons from Clark's residence, and Clark's vehicle was listed in the police computer system as stolen.

[*P20] At approximately 3:32 p.m. that day, Hawley sold two items to Don's Pawn Shop for $ 35: a Bissel vacuum cleaner and a Magic Chef microwave oven. Terry Carolu, manager of Don's Pawn Shop, testified that Hawley was required to show a state-issued identification card or a driver's license to complete the sale. The completed purchase ticket listed the seller as Hawley, and it included Hawley's address, birth date, social security number, height, weight, and state identification number. Carolu identified Hawley as the individual who sold the items. (The following day, Don's Pawn Shop released the property to Clark for $ 35.)

[*P21] At approximately 4:35 p.m. on the same day, Dayton Police Officer Alan Parker, driving a marked police vehicle, observed a white Saturn sedan matching the description of Clark's vehicle. The driver, Hawley, parked the car in front of 115 East Foraker Street, near Miami Valley Hospital in Dayton, and got out of the vehicle. When Parker pulled up behind the Saturn, Hawley "took off running." As Hawley ran across Main Street, he was apprehended by another Dayton police officer. Hawley was detained in Parker's vehicle. When Parker checked the Saturn's license plates, he learned that the vehicle belonged to Clark.

[*P22] Officer Nathan Biggs and Detective Mark Allison of the West Carrollton Police Department met the Dayton officers, and Allison spoke with Hawley inside Parker's police vehicle. According to Allison, Hawley was informed of and waived his Miranda rights, and he admitted to having committed the offenses. Later, at the West Carrollton police station, Hawley made additional written statements, admitting to being in Clark's home, tying her up, and selling her belongings. At the time of his arrest, Hawley had several documents in his possession, including an RTA bus schedule, a bus pass, and a piece of paper reading "H&M" and "859-3368," which Parrett-Baldwin identified as the slip of paper that she had handed to the man at her door that day.

[*P23] Later that evening, Biggs showed Clark a photograph of Hawley. Clark immediately identified Hawley as the individual who had committed the offenses.

> [*P24] At trial, Hawley testified on his own behalf, claiming that, around 2:00 p.m. on January 25, 2006, David Bruner had given him a ride to a medical health building near Stewart Street and Patterson Boulevard in Dayton. Hawley claimed that he saw the Saturn in the parking lot, with the keys, the vacuum, and the microwave oven inside. Hawley asserted that he was merely guilty of taking the car and selling the items inside it. Hawley denied having been at the mobile home park, and he claimed that his written statement was made in response to promises made by Allison. Bruner also testified on Hawley's behalf, but he was unable to specify the exact date or time that he had given Hawley a ride.

*State v. Hawley*, 2010 Ohio 838, ¶¶ 15-24, 2010 Ohio App. LEXIS 716 (Ohio App. 2nd Dist. March 5, 2010)(*"Hawley* 2").

In its consideration of the issues raised in Grounds One and Four regarding *Miranda*, the court of appeals found that Hawley's first incriminating admissions were made immediately after arrest and not is response to any questions. Having run from the victim's stolen car and been apprehended by Dayton Police, Hawley asked why he had been arrested.[1] Dayton Police Officer Parker said it was because he had been driving a stolen vehicle and he responded that he had found the vehicle beside the road with keys in it, that someone wanted him to steal it, and he had worn gloves so there would be no fingerprints. *State v. Hawley*, Case No. C.A. 22019/22053 (Ohio App. 2nd Dist. May 4, 2009)(Ex. 19 to Return of Writ, PageID 154)("*Hawley* 1").

As soon as Detective Allison from West Carrollton (the venue of the crimes) arrived, the first thing he did was to review Hawley's *Miranda* rights with him. *Id.* Hawley indicated both orally and by initialing that he understood his rights and then signed a waiver of them. *Id.* at PageID 155. After some conversation about Hawley's semi-professional baseball career and how he had been on

---

[1] Hawley was plainly in custody at this point. Having been caught by a Dayton Police Officer after a chase, he was handcuffed and place in the rear of a cruiser.

parole for two months for burglary and kidnaping in North Carolina, Hawley admitted tying up the victim with wreath wire in her mobile home and taking her car.  *Id.*

Allison and Hawley then drove to the West Carrollton police station, stopping in route for Allison to buy Hawley a meal.  After they arrived, Hawley admitted trying to get into another woman's home and stealing the car for an organization he worked for, as well as taking and pawning Ms. Clark's microwave and vacuum cleaner.  *Id.* at PageID 156.  Allison then wrote out questioned, Hawley wrote answers, and then signed the bottom of page two of the interview form.  *Id.*  Shown a picture of Ms. Clark and asked "Is this the lady's house you're in and car [you] stole," Hawley admitted it was.  *Id.*  Never in the course of the conversation did Hawley request an attorney. *Id.*

Findings of fact made by a state court in deciding a constitutional claim are presumptively correct; the presumption can be overcome only by clear and convincing evidence which was in the record at the time the state court decided the case.  *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).  This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).  The federal courts give fresh review to claims not adjudicated on the merits in state court but still defer to relevant state court findings of fact. *Couch v. Booker*, 632 F.3d 241(6th Cir. 2011), citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001) and 28 U.S.C. § 2254(e)(1).

The Montgomery County Court of Appeals conclusion based on these factual findings that there was no *Miranda* violation or coerced confession is not an objectively unreasonable application

of clearly established Supreme Court precedent. Once a defendant has been given his *Miranda* warnings, he needs to invoke his right to remain silent to cut off interrogation; if he does not do so and later makes an admission, it is admissible against him. *Berghuis v. Thompkins*, 560 U.S. ___, 130 S. Ct. 2250 (2010).

The first ground for relief and that portion of Ground Four which asserts failure to waive *Miranda* rights and that the police officers were lying in the motion to suppress hearing should be denied.

### Ground Two

The Court reads Hawley's second ground for relief as claiming there was insufficient evidence to convict him.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), a habeas court must give two levels of deference to the state courts' decision:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541

F.3d 652 (6th Cir. 2008).

In this case, having heard all the evidence, the jury convicted Hawley on all counts. Considering the evidence on appeal, the court of appeals held:

> [*P27] Moreover, even disregarding evidence of Clark's show-up identification of Hawley, there was overwhelming evidence to support Hawley's convictions, and it is apparent that the admission of Clark's show-up identification of Hawley, if erroneous, was harmless beyond a reasonable doubt.
>
> [*P28] On the same afternoon, a man came to the homes of Clark and Parrett-Baldwin, asking for information about how to contact H&M. Both women described the man similarly. Although the man reached for Parrett-Baldwin's door, she locked it before the man could enter. In Clark's case, however, the man grabbed her, tied her hands and ankles, took appliances from her home, and drove away in her car.
>
> [*P29] According to the State's evidence, Hawley sold two items belonging to Clark to Don's Pawn Shop; the shop's manager identified Hawley as the man who had sold the items, and Hawley had provided state-issued identification during the transaction. Hawley was later apprehended driving Clark's car. Hawley had several documents in his possession when he was arrested, including the piece of paper on which Parrett-Baldwin had written "H&M" and "859-3368" and which she had handed to the man who came to her door. Hawley confessed to being in Clark's home, tying her up, and selling her belongings. The State thus presented substantial evidence that Hawley assaulted Clark, tied her up, burglarized her home, and stole her car. Hawley's convictions were not against the manifest weight of the evidence, and such an argument would be frivolous.
>
> [*P30]  Clark's show-up identification of Hawley provided additional evidence that Hawley committed the offenses at Clark's residence. However, Clark's show-up identification merely supplemented the already overwhelming evidence presented by the State that Hawley had committed those offenses. Assuming for sake of argument that Clark's show-up identification should have been suppressed, the inclusion of that evidence had no significant effect on the State's case against him and was harmless beyond a reasonable doubt.

> [*P31]  Upon review of the entire record, we agree with appellate counsel that, even assuming that Clark's show-up identification should have been suppressed, there is no potentially meritorious claim that his convictions were against the manifest weight of the evidence.

*Hawley* 1, ¶¶ -31.

On the basis of the facts found by the court of appeals, there is no doubt that the crimes charged were committed against Ms. Clark after 2:00 p.m. on January 25, 2006.  Just prior to that, Ms. Parrett-Baldwin had written the telephone number of the mobile home park where the crimes were committed on a slip of paper which was later recovered from Hawley and identified by  Ms. Parrett-Baldwin who was competent to identify her own handwriting and did not know Ms. Clark. Within an hour of the crimes, Hawley sold the stolen vacuum cleaner and microwave oven at a downtown Dayton pawnshop where he identified himself; he was later identified as the seller by a pawnshop clerk.  Less than an hour later, Hawley was arrested running from Ms. Clark's stolen car. Upon apprehension and after *Miranda* warnings, Hawley admitted everything.  As the court of appeals found, there is ample proof of Mr. Hawley's guilt and his second ground for relief should be dismissed.


**Ground Three**


In his third ground for relief, Hawley points to an asserted inconsistency between the initial description given by Ms. Clark and his appearance when arrest.  Hawley neglects to mention that the red jacket he was supposedly arrested in he had removed and thrown away while being chased by Dayton Police.

This Ground for Relief is a variant of Ground Two. Inconsistencies in testimony are to be weighed by the trier of fact. Given all the other evidence in this case, the jury could properly have concluded that the inconsistency was immaterial.

Ground Three should also be dismissed.

**Ground Four (New Evidence)**

Parts of Ground Four are dealt with in the analysis of Ground One. But in addition Petitioner asserts that there is "a witness . . .willing to come forward to help me clear my name of all charges against me." (Petition, Doc. No. 2, PageID 15.) Hawley does not mention who the witness is, what the witness knows that would exonerate Hawley and how the witness knows it. This is presumably the same witness referred to in Hawley's *pro se* motion to the court of appeals, which it dealt with as follows:

> [*P33]   On February 4, 2010, Hawley, acting pro se, filed a hand-written "Motion to Investigate New Evidence." In his motion, Hawley states that the real perpetrator of the crimes against Clark is in the Warren Correctional Institution and is willing to sign an affidavit on Hawley's behalf. Hawley asks for an extension of 40 days to "investigate new evidence" and requests that his original court-appointed attorney be re-appointed to investigate Hawley's "allegations of the real perpetrator who has done these charges ***." Hawley, again acting pro se, has also filed a separate motion for new counsel, raising similar issues.
>
> [*P34]  We reject Hawley's request for an extension of time in order to launch a criminal investigation into the alleged "real perpetrator." In addition, we will not conduct an independent investigation of Hawley's allegations, nor will we re-appoint Hawley's original counsel to assist in such an investigation. The role of an appellate court is to review alleged errors by the trial court, and, in addressing an appeal, the appellate court is limited to the record created in the

> trial court. See *Folck v. Henry*, Montgomery App. No. 19984, 2004 Ohio 3772, P11. It is beyond the authority of this Court to conduct a criminal investigation. If Hawley has discovered new evidence that bears on his convictions, his recourse, if he meets certain statutory requirements, is to file a motion for a new trial and/or a petition for post-conviction relief in the trial court. Hawley's motions are overruled.

*Hawley* 1, ¶ 33-34. Petitioner has not given this Court any more information than he gave the court of appeals about the alleged "real perpetrator," although it has been two years since he filed his *pro se* motion. Even if he had, this Court is even less able than the state court of appeals to consider this asserted new evidence. As the court of appeals recognized, he has available remedies in the state courts by way of an application for post-conviction relief or motion for new trial.[2] Until he has exhausted those remedies and any appeals from adverse decisions in the trial court, this Court cannot consider his claim that the real perpetrator is someone other than himself.

**Conclusion**

Petitioner's claims are without merit and should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that an appeal would not be taken in objective good faith.

February 20, 2012.

s/ **Michael R. Merz**<br>United States Magistrate Judge

---

[2] These possible remedies may, of course, be impeded by procedural defenses such as Hawley's delay in raising the claim.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).